THE TRUSTEES FOR THE SUPPORT OF PUBLIC SCHOOLS

*v.*

JOHN ANDERSON and others.

A release of a grantee's assumption of a mortgage debt, given by an insolvent grantor after notice of foreclosure, without consideration and for the sole and admitted purpose of defeating the mortgagee's claim in equity for deficiency, is void in equity.

Bill to foreclose. On final hearing on pleadings and proofs.

*Attorney-General John P. Stockton,* for complainants.

*Mr. C. M. Woodruff* and *Mr. L. Cochran,* for answering defendants.

THE CHANCELLOR.

The question presented for consideration is, whether the release by a grantor of a covenant made in his favor by his grantee stipulating to pay a mortgage given by the former on the land, and to which, but for the release, the mortgagee would, in equity, be entitled to have recourse for the payment of the mortgage debt, is effectual against the mortgagee where the release is merely voluntary, and confessedly made for the mere purpose of depriving the mortgagee of such recourse.

In the case in hand the defendant John Anderson, on the 12th of August, 1871, gave to the complainants, The Trustees for the Support of Public Schools, a mortgage for nine thousand dollars, payable in one year from the date of

NOTE.—Under what circumstances a release of an assumption of a mortgage, made by the grantor to his immediate grantee, may be valid as against the mortgagee, see *Stephens* v. *Casbacker,* 8 *Hun* 116; also, *Hartley* v. *Harrison,* 24 *N. Y.* 170.—REP.

the mortgage, with interest payable semi-annually, on about one hundred and eighty-three acres of land in Sussex county. On the 26th of August, 1871, a few days after the date of the mortgage, the mortgagor conveyed the mortgaged premises to Benjamin Anderson, Jr., for the consideration, as expressed in the deed, of ten thousand dollars, the grantee expressly assuming the payment of the mortgage.

On the 1st of April, 1873, Benjamin Anderson, Jr., conveyed the property (the mortgage debt was then past due) to Hiram Ackerson, for the consideration of eleven thousand dollars. The deed contained the statement that it was well understood by the parties thereto that the property was subject to the encumbrance of two mortgages, one of which was the complainant's, and the other a subsequent one, and that the grantee thereby assumed to pay them as part of the purchase-money. Ackerson, by deed dated February 9th, 1874, conveyed the property to Michael Youngs, for the consideration of nine thousand eight hundred and ninety-one dollars and eighteen cents. The deed contained a like assumption on the part of the grantee as to the complainants' mortgage. On the 16th of March, 1875, Youngs conveyed the farm to Benjamin A. Anderson, for the consideration of ten thousand · five hundred and twenty-one dollars and twenty-five cents, the grantee assuming the payment of the mortgage of the complainants. In February, 1874, the state treasurer duly notified Youngs, then the owner of the property, and the mortgage being past due, that a payment of two thousand dollars of the principal, on or before the 1st of April then next, was demanded by the complainants. In March, 1875 (the demand not having been complied with), another was, by due authority, made on Youngs (he, however, was not then the owner of the property), for payment · of two thousand dollars, on account of principal, on or before the 1st of May then next. This demand, also, was not complied with. The interest was paid up to February 12th, 1876. On the

24th of April, 1877, the attorney-general wrote to Youngs that the mortgage had been placed in his hands, with positive orders to proceed to collect it, and requesting him to pay the money.

The search of the records of Sussex county necessary to be made, with a view to the foreclosure proceedings, was made by the clerk of that county, on the requisition of the attorney-general, and was completed on the 2d day of May, 1877, and the bill was filed on the 22d of that month. On the 5th of that month, after the search had been made, and before the filing of the bill, the mortgagor and Benjamin Anderson, Jr., Horace Ackerson and Michael Youngs executed releases of that date—the mortgagor to Benjamin Anderson, Jr., the latter to Ackerson, and he to Youngs— of their respective assumptions of the complainants' mortgage in the deeds to them respectively. The releases were for a nominal consideration, and were executed merely for the purpose of preventing the complainants from having recourse in equity to Youngs for the payment of the mortgage debt. The mortgagor was and is entirely insolvent, while Youngs is, as he admits, pecuniarily responsible. The defendants, Benjamin Anderson, Jr., Hiram Ackerson and Michael Youngs, have answered, denying their liability to pay deficiency.

That the releases were executed and delivered merely in view of this suit, and for the purpose of preventing the complainants from having recourse in equity to Youngs, is proved, and, indeed, is admitted. That the grantor may, before suit brought against his grantee by the mortgagee to obtain the benefit of such a covenant of assumption, release or discharge it, and so prevent the mortgagee from obtaining any benefit of it, is established. *Crowell* v. *Hospital of St. Barnabas*, 12 *C. E. Gr.* 650. But the act of release or discharge, to be effectual, must be done *bona fide*, and not merely for the purpose of thwarting the mortgagee and depriving him of an equity to which he is entitled. Where a person, in consideration of a debt due from him, agrees

with his creditor that he will, in discharge of it, pay the amount to the creditor of the latter, in discharge or on account of a debt due from the latter to him, though the agreement may be *bona fide* rescinded by the parties to it for considerations or reasons satisfactory to themselves, and without account or liability to the creditor who is not a party to it, yet, if the promisee be insolvent, and the rescission be merely a forgiving of the debt for the mere purpose of defrauding the creditor of the promisee, or protecting the promisor against his liability, the rescission will not avail in equity.

In the present case, recourse was had to the expedient of the releases, as a means of protecting Youngs against his liability to the complainants, who, though they had not, in fact, commenced suit, were, as the parties to the releases well knew, about to do so; and they had made preparations accordingly. No consideration passed, nor was any to be given. Nor were the releases founded on any equity or equitable consideration. The mortgagor was insolvent, and had no longer any interest in the indemnity which Youngs had given him against his liability on the complainants' mortgage. Had he been solvent, the releases would, of course, not have been executed. The hollow, unsubstantial formality of the execution and delivery of the releases creates no barrier to the equitable relief to which the complainants are entitled.

A release executed *mala fide*, for the mere purpose of defeating the action of equity, or of eluding its reach, will be of no avail. It is conceded that it would have been too late to discharge or affect the equity under consideration as against the mortgagees *in invitum*, by agreement between the mortgagor and his grantee after suit had been actually commenced, and this case is within that principle. The attorney-general notified Youngs, by letter dated April 24th, 1877, addressed to him at Newton, of his intention to bring suit to collect the mortgage debt. Youngs lived at Andover, a few miles distant from that place. The letter

appears to have been forwarded to him at Andover, from Newton, on the 1st of May following. The releases were executed four days afterwards.

There will be a personal decree for deficiency against the answering defendants.